# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

GERALD WATSON,
    Petitioner,

Case No. 1:12-cv-362

  vs.

Dlott, J.
Litkovitz, M.J.

WARDEN, WARREN
CORRECTIONAL INSTITUTION,
    Respondent.

**REPORT AND
RECOMMENDATION**

Petitioner has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §

2254, challenging his criminal convictions and sentence in Hamilton County, Ohio, Court of

Common Pleas Case No. B-0010201. This matter is before the Court on the petition;

respondent's return of writ with exhibits; petitioner's reply to the return of writ; and respondent's

supplemental submission filed in accordance with this Court's Order of February 13, 2013,

granting petitioner's motion for production of the transcript of his resentencing hearing held in

March 2010. (Docs. 5, 8, 11, 18; *see also* Docs. 12, 17).

## I. FACTUAL BACKGROUND

The incident that led to petitioner's criminal prosecution occurred on December 25, 2000.

(*See* Doc. 8, Ex. 1). The Ohio Court of Appeals, First Appellate District, has provided the

following summary of the facts giving rise to the criminal charges:[1]

---

[1] The Ohio appellate court summarized the facts based on evidence presented at petitioner's trial in a
decision issued on August 9, 2002, affirming the trial court's judgment of conviction and original sentence. (*See*
Doc. 8, Ex. 8). 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of
habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue
made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing
evidence." In the absence of clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings
quoted below, those findings are presumed to be correct. *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

Gerald Watson and an accomplice, Marlin Thomas, engaged in a vicious crime spree on a Christmas night. When the spree concluded with a car crash following a high-speed chase, four victims, including an eighty-three-year-old woman, had been injured.

****

Watson and Thomas's rampage began after dark on a Christmas evening. Their first victim, Antwan Davis, was walking to a party at his cousin's house when a conversion van stopped a few feet from him. Two masked men jumped out of the van and accosted him. One of the masked figures held a gun to Davis's head with one hand while grabbing and ripping Davis's pockets with the other. The second masked figure stood off to the side, also holding a gun.

When it became apparent that Davis had been truthful in exclaiming that he had nothing worth stealing, the masked man pulled the trigger aimed at Davis's head. Davis heard the metallic click, but the gun did not fire. Davis ran for his life.

As he ran, he heard his two assailants arguing. One asked the other why he had not shot Davis, and then he yelled, "Kill him. Shoot him." In response, two shots were fired and Davis was hit in the back of the knee. But he limped on, screaming for help, until he attracted the attention of a passer-by, who called 911. Davis was transported to a hospital, where he described the attack and his assailants to the police.

Less than an hour later, Steven Ungerbuehler was driving his mother's friend, eighty-three-year-old Mary Barnett, home from Christmas dinner. As they parked the car and began to walk up the driveway to the front door of Barnett's home, a van stopped behind them. Two masked men got out. One of the men was brandishing a weapon and commanded Ungerbuehler and Barnett to "get down." Barnett did not hear the command even though she was wearing both her hearing aids. The assailant smashed her in the face with his gun and broke her nose when she failed to comply with his instructions. As she lay helpless, screaming and bleeding on the ground, he shot her in the arm and took her purse. The accomplice stole Ungerbuehler's wallet, and both men got back in the van and drove off.

A few minutes later, Cincinnati police officer Lilgenia Text[l]er barely avoided a collision with a large van as it sped through a stop sign and almost struck the side of her patrol car. She and her partner activated the patrol car's lights and siren and pursued the van. The van initially pulled over, but when the officers got out of the patrol car and began to approach the vehicle, the driver sped away.

The driver of the van, later identified as Marlin Thomas, led the police on a chase through residential neighborhoods at speeds in excess of eighty miles per hour. During the chase, Officer Textler learned that the van that she and her partner

2

were pursuing had been reported stolen. Also during the chase, Officer Textler saw the van's passenger throw some objects out of the window. Those items, which included a white purse, were later recovered and identified as the belongings stolen from Mary Barnett.

But there would be one more victim before Thomas and Watson's rampage ended. Anthony Jones had just left Christmas dinner with his girlfriend. He was driving through an intersection when, from the corner of his eye, he caught a glimpse of a van rushing at him. The van barreled through a stop sign, crashed into his car, and flipped over. Jones was knocked unconscious by the collision and awoke in a hospital with a concussion and injuries to his ribs and back.

The stolen van's driver, Thomas, was also knocked unconscious by the collision. But the passenger, Watson, climbed out of the overturned van's passenger side window and fled on foot. A police canine unit later tracked him to his hiding place under a nearby porch, where he was arrested. Meanwhile, officers had arrested Thomas and had searched the van. They found two bandanas, a loaded gun, and Ungerbuehler's wallet. The gun was later identified as the weapon that had been used to shoot Barnett.

(Doc. 8, Ex. 8, pp. 2-4).

## II.    PROCEDURAL HISTORY

### January 5, 2001-August 9, 2002:  State Trial and Appeal Proceedings

On January 5, 2001, the Hamilton County grand jury returned a fifteen-count indictment

in Case No. B-0010201 against petitioner and Thomas.  Petitioner was charged with four counts

of aggravated robbery in violation of Ohio Rev. Code § 2911.01(A) with firearm specifications

(Counts 1, 4, 14, 15); four counts of robbery in violation of Ohio Rev. Code § 2911.02(A)

(Counts 2, 5, 6, 13); three counts of felonious assault in violation of Ohio Rev. Code §

2903.11(A) with firearm specifications (Counts 3, 7, 8); and two counts of receiving stolen

property in violation of Ohio Rev. Code § 2913.51(A) (Counts 9, 12).  (Doc. 8, Ex. 1).  The

aggravated robbery and robbery charges stemmed from four separate incidents involving victims

Davis (Counts 1, 2), Barnett (Counts 4, 5), Ungerbuehler (Counts 6, 15), and Jones (Counts 13,

3

14).[2]  (*See id.*).  The felonious assault charges were based on the incidents that resulted in physical injury to victims Davis (Count 3) and Barnett (Counts 7, 8).  (*Id.*).

The matter proceeded to trial before a jury.  At the conclusion of the State's case, the trial court granted petitioner's motion for a judgment of acquittal for the receiving-stolen-property offense charged in Count 12 of the indictment.  (*Id.*, Ex. 2).  At the end of the eight-day trial, the jury found petitioner guilty on all of the aggravated robbery and felonious assault counts with specifications and three of the robbery counts.  (*See id.*, Ex. 3).  The robbery charge set forth in Count 13 and the remaining receiving-stolen-property charge set forth in Count 9 were dismissed.  (*Id.*, Ex. 4).  Following a sentencing hearing, the trial court issued the final judgment entry on October 23, 2001, sentencing petitioner to an aggregate prison term of forty-one (41) years.[3]  (*Id.*, Ex. 3).

With the assistance of new counsel for appeal purposes, petitioner filed a timely notice of appeal to the Ohio Court of Appeals, First Appellate District.  (*Id.*, Ex. 5).  In the appellate brief filed by counsel on petitioner's behalf in that appeal (Case No. C010691), petitioner presented the following assignments of error:

1.  THE TRIAL COURT ERRED IN VIOLATION OF APPELLANT'S RIGHT TO EQUAL PROTECTION OF LAW AND DUE PROCESS RIGHTS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS OF

---

[2]  The charges involving victim Jones were based on the allegation that in "fleeing immediately" after the commission of the theft of personal property from Barnett, petitioner "used or threatened the immediate use of force against" and/or "inflicted or attempted to inflict serious physical harm on" Jones. (*See* Doc. 8, Ex. 1, Counts 13 & 14).

[3]  Specifically, petitioner was sentenced to consecutive terms of imprisonment of six (6) years for the aggravated robbery offense charged in Count 1; three (3) years on one of the firearm specifications attached to Count 1; five (5) years for the felonious assault offense charged in Count 3; eight (8) years for the aggravated robbery offense charged in Count 4; three (3) years on one of the firearm specifications attached to Count 4; four (4) years each for the felonious assault offenses charged in Counts 7 and 8; and four (4) years each for the aggravated robbery offenses charged in Counts 14 and 15. (Doc. 8, Ex. 3). The court did not impose any sentence for the robbery offenses or remaining firearm specifications. After finding those additional charges involved "allied offenses," the court merged the robbery counts with other charges and the remaining firearm specifications with the 3-year-term specifications attached to Counts 1 and 4 for sentencing purposes. (*See id.*).

4

THE UNITED STATES CONSTITUTION BY OVERRULING HIS *BATSON* CHALLENGES TO THE STATE'S USE OF ITS PEREMPTORY CHALLENGES TO SYSTEMATICALLY EXCLUDE AFRICAN-AMERICAN JURORS FROM THE TRIAL.

2. APPELLANT WAS DENIED THE DUE PROCESS OF LAW IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BY THE MISCONDUCT OF THE ASSISTANT PROSECUTOR.

3. THE EVIDENCE ADDUCED AT TRIAL WAS INSUFFICIENT AS A MATTER OF LAW TO SUSTAIN THE CONVICTION RENDERED BELOW.

4. THE JUDGMENT OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

5. THE TRIAL COURT ERRED AS A MATTER OF LAW BY IMPOSING CONSECUTIVE SENTENCES IN VIOLATION OF R.C. 2929.14(E)(1) THRU (4) AND BY IMPOSING MORE THAN THE MINIMUM SENTENCE WITHOUT MAKING THE APPROPRIATE FINDINGS.

6. THE TRIAL COURT ERRED AS A MATTER OF LAW BY NOT DECLARING A MISTRIAL SUA SPONTE WHEN A POLICE OFFICER TESTIFIED THAT APPELLANT REFU[]SED TO BE INTERVIEWED BY THE POLICE.

(*Id.*, Ex. 6).

On August 9, 2002, the Ohio Court of Appeals overruled the assignments of error and affirmed the trial court's judgment. (*Id.*, Ex. 8). Respondent states that petitioner did not attempt to appeal that decision to the Ohio Supreme Court. (*Id.*, Brief, p. 5).

### June 2008: Motion For New Trial

Petitioner took no further action to challenge his convictions or sentence until nearly six years later, when he filed a *pro se* motion for new trial with the trial court on June 27, 2008. (Doc. 8, Ex. 9). In the motion, petitioner claimed that his indictment was defective under the Ohio Supreme Court's decision in *State v. Colon*, 885 N.E.2d 917 (Ohio 2008). (*Id.*). On November 7, 2008, the trial court denied the motion without opinion. (*Id.*, Ex. 10).

5

Petitioner timely appealed to the Ohio Court of Appeals, First Appellate District. (*Id.*, Ex. 11). On August 26, 2009, the Ohio Court of Appeals affirmed the trial court's ruling on the ground that the trial court had no jurisdiction to entertain the motion for new trial filed after the judgment of conviction and sentence had been affirmed on direct appeal. (*Id.*, Ex. 14). In so ruling, the state appellate court modified the trial court's judgment to reflect a dismissal of petitioner's motion for new trial. (*See id.*). Respondent states that petitioner did not pursue a further appeal to the Ohio Supreme Court in that matter. (*Id.*, Brief, p. 6).

### April 2009: Delayed Application To Reopen Appeal

On April 8, 2009, while his appeal was pending before the Ohio Court of Appeals from the denial of his motion for new trial, petitioner next filed a *pro se* application pursuant to Ohio R. App. P. 26(B) with the Ohio Court of Appeals, First Appellate District, requesting that the direct appeal proceedings (Case No. C010691) be reopened. (Doc. 8, Ex. 41). In the application, petitioner claimed that his appellate counsel was ineffective for failing to raise the following issues on direct appeal:

1. Are the counts of felonious assault under O.R.C. §2903.11(A)(1) & (2) respectfully, as they pertain to Mary Barnett in count 7 and count 8, also as to count four and fourteen Aggravated Robbery of Mary Barnett under O.R.C. 2911.01(A)(1), & 2911.01(A)(3) of Anthony Jones, allied offenses of similar import with one animus, thereby allowing only one conviction for essentially the same conduct?

2. An Indictment for Aggravated Robbery and Robbery which does not contain a MENS REA Element for commission of each of those crimes is defective and constitutes structural error when the defendant is never placed on notice of the proper MENS REA element and the trial court fails to provide that proper element in its jury instructions.

3. The trial court erred as a matter of law by not advising Appellant of post release control sanctions.

(*Id.*).

6

On May 6, 2009, the Ohio Court of Appeals overruled petitioner's reopening application, filed years after the 90-day period set forth in Rule 26(B)(2)(b) for filing a timely reopening application had expired, on the ground that "appellant has failed to provide sufficient reasons for failure to timely file his application to reopen his appeal." (*Id.*, Ex. 44). Respondent states in the return of writ that petitioner did not seek to appeal that decision to the Ohio Supreme Court. (*Id.*, Brief, p. 9).

**June 2009 Motion To Vacate Sentence/March 2010 Resentencing Proceedings**

Petitioner's next attempt to challenge his convictions and sentence involved a *pro se* motion to vacate sentence filed with the trial court on June 8, 2009. (Doc. 8, Ex. 15). Petitioner claimed in that motion that his sentence was void under the Ohio Supreme Court's decisions in *State v. Jordan*, 817 N.E.2d 864 (Ohio 2004), and *State v. Bezak*, 868 N.E.2d 961 (Ohio 2007), because the trial court failed to inform him about "the dictates of Mandatory Post Release Control" at sentencing. (*See id.*). On August 3, 2009, the trial court overruled the motion. (*Id.*, Ex. 16).

Petitioner appealed to the Ohio Court of Appeals, First Appellate District. (*Id.*, Ex. 17). In that appeal proceeding (Case No. C0900617), the State conceded that petitioner had not been properly advised about post-release control at sentencing and requested that the case be remanded to the trial court for resentencing. (*Id.*, Ex. 21). On February 18, 2010, the Ohio Court of Appeals granted the State's motion to remand the matter for resentencing so that petitioner could be informed of post-release control. (*Id.*, Ex. 22).

On March 24, 2010, petitioner appeared before the trial court with counsel for resentencing in accordance with the Ohio Court of Appeals' remand order. (*See id.*, Ex. 24). On March 31, 2010, the court issued a judgment entry resentencing petitioner to the same terms of

imprisonment for an aggregate prison term of forty-one (41) years. (*Id.*). The entry contained the following additional provision: "As part of the sentence in this case, the Defendant shall be supervised by the Adult Parole Authority after Defendant leaves prison, which is referred to as post-release control, for five (5) years." (*Id.*).

Thereafter, on April 8, 2010, the Ohio Court of Appeals entered an order dismissing petitioner's appeal in Case No. C0900617. The court concluded that the appeal was moot because there was "no final judgment from which to maintain this appeal" given that the previous judgment under appeal had been vacated and petitioner had been resentenced in accordance with the court's remand order. (*Id.*, Ex. 23). On April 18, 2010, petitioner filed a *pro se* motion for reconsideration pursuant to Ohio R. App. P. 26(A) with the state appellate court. (*Id.*, Ex. 25). Petitioner contended in the motion that the trial court failed to hold a *de novo* resentencing hearing in compliance with "the mandates of the Ohio Supreme Court in *Bezak*." (*Id.*). In opposing petitioner's motion, the State pointed out that petitioner's claim "would be properly presented to this Court in the form of a direct appeal from the resentencing." (*See id.*, Ex. 26). On May 5, 2010, the Ohio Court of Appeals overruled petitioner's application for reconsideration without opinion. (*Id.*, Ex. 28). Respondent states that petitioner did not pursue an appeal from that decision to the Ohio Supreme Court. (*Id.*, Brief, p. 7).

**March 2010: Motions To Dismiss Indictment And For New Trial**

On March 9, 2010, after the Ohio Court of Appeals ordered that petitioner be resentenced but prior to the resentencing hearing, petitioner filed a *pro se* motion with the trial court requesting that the indictment be dismissed as defective under the Ohio Supreme Court's *Colon* decision. (Doc. 8, Ex. 29). The next day, March 10, 2010, petitioner filed a second *pro se* motion with the trial court, requesting leave to file a motion for new trial based on new evidence

8

in the form of an affidavit from co-defendant Marlin Thomas exonerating petitioner of the crimes committed on December 25, 2000. (Doc. 8, Ex. 30). On November 19, 2010, the trial court denied both motions. (*Id.*, Exs. 33-34). Respondent states in the return of writ that petitioner "failed to perfect a timely appeal" to the Ohio Court of Appeals "from these denials." (*Id.*, Brief, p. 8).

### October 2011:  Motion For Delayed Reconsideration Of August 9, 2002 Appeal Decision

On October 21, 2011, over nine years after the Ohio Court of Appeals issued its decision on August 9, 2002 affirming petitioner's convictions and original sentence on direct appeal, and over two years after the Ohio Court of Appeals denied petitioner's application under Ohio R. App. P. 26(B) for delayed reopening of the direct appeal on May 6, 2009, petitioner filed a *pro se* application with the Ohio Court of Appeals, First Appellate District, requesting reconsideration of its August 9, 2002 direct appeal decision. (Doc. 8, Ex. 45). Although petitioner had been resentenced in the interim, petitioner sought reconsideration of the assignment of error challenging the imposition of consecutive, non-minimum prison terms. (*See id.*). Thereafter, petitioner filed a motion for leave to amend the application for reconsideration. (*Id.*, Ex. 48).

On November 9, 2011, the Ohio Court of Appeals denied petitioner's delayed application for reconsideration without opinion. (*Id.*, Ex. 49). On December 7, 2011, the state appellate court also summarily denied petitioner's motion for leave to amend the application for reconsideration. (*Id.*, Ex. 50). Apparently, petitioner did not appeal those decisions to the Ohio Supreme Court. (*See id.*, Brief, p. 5 n.2).

### November 2011:  Delayed Appeal Of March 2010 Resentencing Decision

On November 18, 2011, over a year and a half after petitioner was resentenced and over a year after the Ohio Court of Appeals rejected petitioner's attempt to challenge his resentencing in

the appeal that was filed to contest the denial of his motion to vacate the original sentence (Case

No. C0900617), petitioner filed a *pro se* notice of appeal and motion for leave to file a delayed

appeal to the Ohio Court of Appeals, First Appellate District, from the trial court's March 31,

2010 resentencing entry.  (Doc. 8, Exs. 35-36).  In the motion, petitioner provided the following

explanation for his delay in filing:

> Defendant was asked [at the March 24, 2010 resentencing hearing] did he want to
> appeal and defendant said yes and Judge Nadine Allen said that she would
> appoint Mr. Watson an appellant attorney.  Mr. Watson waited seven months
> before filing a Writ of Mandamus to get a[] final appealable order because this
> court issued an entry of dismissal stating that was not final judg[]ment to maintain
> an appeal on April 8, 2010.  This court dismissed the mandamus on 12-8-10. Mr.
> Watson  wrote the Hamilton County Public Defenders office and they responded
> back on 1-18-11 stating that no appeal was filed on 3-24-10 and also sent a copy
> of the judg[]ment entry.  Mr. Watson was told that he would have an appellant
> attorney representing him on his appeal, but still has not received any information
> about an attorney or an appeal.  Know this action follows.

(*Id.*, Ex. 35).

On December 13, 2011, the Ohio Court of Appeals overruled petitioner's motion for

leave to file a delayed appeal on the ground that petitioner had "failed to provide sufficient

reasons for failure to perfect an appeal as of right." (*Id.*, Ex. 37).

Petitioner did not perfect a timely appeal to the Ohio Supreme Court from that decision.

It appears from the record that pleadings petitioner initially submitted for filing were returned to

him by letter dated January 20, 2012 from the Office of the Clerk of the Ohio Supreme Court.

(*See id.*, Ex. 38).  The letter provided in pertinent part that the documents were not filed because

petitioner had failed to file a notice of appeal as required by Rule 2.2 of the Rules of Practice of

the Supreme Court of Ohio.  (*Id.*).  Petitioner was further advised:

> You may resubmit your documents along with a notice of appeal.  To be timely,
> however, they must be received in the Clerk's Office on or before **January 27,**
> **2012**.  The Clerk's Office is not permitted to file untimely documents.

(*Id.*). Petitioner stated that he attempted a second time to perfect an appeal with the Ohio Supreme Court. However, the pleadings, which petitioner claimed were "sent out by regular U.S. mail on [J]anuary 24, 2012," were returned because they were not received by the clerk's office until February 2, 2012, after the deadline for filing a timely appeal had passed. (*See id.*, "Affidavit").

On February 23, 2012, petitioner filed a notice of appeal and motion for leave to file a delayed appeal to the state's highest court. (*Id.*, Exs. 38-39). On April 18, 2012, the Ohio Supreme Court denied petitioner's delayed appeal motion and dismissed the cause without opinion. (*Id.*, Ex. 40).

### Federal Habeas Corpus

Petitioner commenced the instant habeas corpus action in May 2012.[4] (*See* Doc. 1). In the petition, petitioner asserts the following grounds for relief:

> **GROUND ONE**:  PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOLLOWING HIS RESENTENCING HEARING AFTER HIS SENTENCE WAS VACATED AND REMANDED, IN VIOLATION OF THE 6TH AND 14TH AMENDMENTS.
>
> **Supporting Facts**:  After Petitioner successfully appealed his sentence, the trial court at resentencing informed Petitioner of his appellate rights and further informed Petitioner that appellate counsel would be appointed.  No appointed counsel was ever assigned and that prevented Petitioner from filing a timely notice of appeal and this further prevented Petitioner a mea[]ningful review of his case with effective assistan[ce] of appellate counsel, a constitutional right.
>
> **GROUND TWO**:  THE TRIAL COURT VIOLATED PETITIONER'S STATE AND FEDERAL DOUBLE JEOPARDY CLAUSE PROTECTIONS, AS WELL AS STATE AND FEDERAL DUE PROCESS RIGHTS BY SENTENCING PETITIONER ON AGGRAVATED ROBBERY AND FELONIOUS ASSAULT WHICH WERE OFFENSES OF SIMILAR IMPORT AND THE TR[IA]L COURT['S] FAILURE TO MERGE THESE COUNTS VIOLATED PETITIONER'S DOUBLE JEOPARDY PROTECTIONS.

---

[4] Petitioner initiated the action by filing an application to proceed *in forma pauperis*. (*See* Doc. 1). Although the matter was initially "administratively closed" upon denial of petitioner's *in forma pauperis* application, the case was reopened when petitioner paid the $5.00 filing fee on June 5, 2012. (*See* Docs. 2, 4).

**Supporting Facts**: Petitioner was sentenced for Aggravated Robbery and Felonious Assault in violation of ORC 2911.02(A)(1) and ORC 2903.11(A)(2). These were committed with a single animus and therefore constitute allied offenses and the trial court had a duty to merge these sentences and the failure to do so violated Petitioner's Double Jeopardy Clause protections.

**GROUND THREE**:   THE TRIAL COURT VIOLATED PETITIONER'S SIXTH AMENDMENT JURY RIGHT BY SENTENCING PETITIONER TO THE SAME CONSTITUTIONALLY INFIRM SENTENCE THAT WAS INITIALLY IMPOSED PRIOR TO THE RESENTENCING HEARING.

**Supporting Facts**: Petitioner, according to Ohio sentencing laws at the time of initial sentencing, entitled Petitioner to the minimum sentence. After Petitioner's sentence was vacated, Petitioner raised this issue with the trial court and although they acknowledged the fact that Petitioner was entitled to the "presumptive minimum" the court failed to impose the statutory correct sentence.

(Doc. 5, pp. 6, 8, 9).

Respondent has filed a return of writ in response to the petition. (Doc. 8). Respondent contends that petitioner procedurally defaulted and has waived his claims for relief. (*See id.*). Petitioner has filed a "traverse" brief in reply to the return of writ, arguing that "cause and prejudice" exists to overcome any procedural bar to review. (Doc. 11).

## III.   THE PETITION SHOULD BE DENIED BECAUSE PETITIONER PROCEDURALLY DEFAULTED AND HAS WAIVED HIS CLAIMS FOR RELIEF.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990);

*Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985). If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the default of a federal claim in the state court may preclude federal habeas review if the state court judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *See Harris,* 489 U.S. at 260-62. The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something to preserve the issue for appellate review. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

In the usual case, the adequate and independent state ground doctrine will not apply to bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural

bar. *Harris,* 489 U.S. at 263; *see also Simpson v. Jones,* 238 F.3d 399, 406 (6th Cir. 2000). In

those cases where the last state court to render a reasoned opinion explicitly relies on a

procedural bar, the court will presume that a later unexplained order did not silently disregard the

procedural default and consider the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-

04 (1991). Moreover, in *Harris,* the Supreme Court explained that the rule requiring that the

state court plainly state that its judgment rests on a state procedural default "applies only when a

state court has been presented with the federal claim" raised by the state prisoner as a ground for

federal habeas relief. *Harris,* 489 U.S. at 263 n.9; *see also Teague v. Lane,* 489 U.S. 288, 299

(1989) (plurality opinion) ("The rule announced in *Harris . . .* assumes that a state court has had

the opportunity to address a claim that is later raised in a federal habeas proceeding."). The

Court stated: "Of course, a federal habeas court need not require that a federal claim be

presented to a state court if it is clear that the state court would hold the claim procedurally

barred." *Harris,* 489 U.S. at 263 n.9.

The rule precluding federal habeas corpus review of claims rejected by the state courts on

state procedural grounds applies only in cases where the state rule relied on by the courts is

deemed "adequate" or, in other words, involves a "firmly established and regularly followed

state practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991);

*Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743, 751 (6th

Cir. 2000)), *rev'd on other grounds,* 546 U.S. 74 (2005) (per curiam); *Warner v. United States,*

975 F.2d 1207, 1213 (6th Cir. 1992); *see also Rideau v. Russell,* 342 F. App'x 998, 1002 (6th

Cir. 2009). To be considered regularly followed, a procedural rule need not be applied in every

relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams,* 489 U.S. 401, 410

n.6 (1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000).

The Sixth Circuit employs a three-prong test, which was initially established in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), to determine if a claim is procedurally defaulted under the adequate and independent state ground doctrine:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Hoffner v. Bradshaw*, 622 F.3d 487, 495 (6th Cir. 2010) (quoting *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001) (in turn quoting *Maupin*)), *cert. denied*, 131 S.Ct. 2117 (2011); *see also Johnson v. Bradshaw*, 493 F. App'x 666, 669 (6th Cir. 2012). Under *Maupin* and as discussed above, if the three prerequisites are met for finding a claim is procedurally defaulted under the adequate and independent state ground doctrine, federal habeas corpus review of the defaulted claim is precluded unless the petitioner can demonstrate cause for and prejudice from his procedural default or that failure to consider the defaulted claim will result in a "fundamental miscarriage of justice." *Hoffner*, 622 F.3d at 495 (citing *Maupin*, 785 F.2d at 138); *Johnson*, 493 F. App'x at 669. *See also Coleman*, 501 U.S. at 750; *Harris*, 489 U.S. at 262; *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In this case, petitioner committed numerous procedural defaults, which deprived the Ohio Supreme Court of the opportunity to consider any of his grounds for federal habeas relief.

First, to the extent petitioner raises claims in Grounds Two and Three challenging the constitutionality of the original sentence, which was reimposed when petitioner was resentenced in March 2010 to correct a separate post-release control notification problem, petitioner committed a procedural default by failing to raise those claims as assignments of error in the

initial direct appeal that concluded on August 9, 2002, when the Ohio Court of Appeals affirmed the trial court's judgment of conviction and sentence. (*See* Doc. 8, Ex. 8). Petitioner additionally defaulted the claims when he filed a delayed application for reopening of the direct appeal, followed by a delayed application for reconsideration of the direct appeal decision, years after the deadlines had passed for filing such motions. In the application for reopening filed in April 2009, petitioner did not even assert the claim alleged in Ground Three as an example of his appellate counsel's ineffectiveness. (*See id.*, Ex. 41). To the extent he may have raised the claim alleged in Ground Two in that application, the state appellate courts were not provided with an opportunity to consider the merits of the claim underlying his allegation of ineffective assistance because (1) the Ohio Court of Appeals relied on an adequate and independent state procedural ground when it dismissed petitioner's reopening application as untimely; and (2) petitioner failed to appeal the denial of his reopening application to the Ohio Supreme Court. (*See id.*, Brief, p. 9 & Ex. 44). Over two years later, in October 2011, petitioner filed the delayed application for reconsideration raising for the first time the claim alleged in Ground Three of the petition. (*See id.*, Ex. 45). However, the Ohio Court of Appeals refused to reconsider its decision issued over nine years earlier, and in any event, petitioner again defaulted the claim by failing to pursue a further appeal to the Ohio Supreme Court. (*See id.*, Brief, p. 5 n.2 & Ex. 49).[5]

Finally, even assuming, *arguendo*, petitioner could still seek review of the claims raised in Grounds Two and Three by way of an appeal from the resentencing decision issued in March

---

[5] It is also noted that petitioner did not raise the claims alleged in Grounds Two and Three of the instant petition in his state post-conviction motions for new trial, to dismiss the indictment, and to vacate sentence. (*See* Doc. 8, Exs. 9, 15, 29, 30). Even if petitioner had raised the two grounds for federal habeas relief in the state post-conviction proceedings, such claims would still be considered procedurally defaulted because petitioner did not pursue appeals up to the state's highest court in any of those state-court proceedings. (*See id.*, Brief, pp. 6, 7, 8). Moreover, as the Ohio Court of Appeals apparently understood in dismissing the appeal from the denial of petitioner's motion to vacate sentence and in overruling petitioner's subsequent motion for reconsideration in that matter (Case No. C0900617), the post-release control issue that was raised by petitioner in his motion to vacate was corrected in the March 2010 resentencing hearing held in accordance with the Ohio Court of Appeals' remand order. (*See id.*, Exs. 23, 28).

2010, petitioner committed additional defaults in the resentencing matter, which precludes this Court from considering the merits of those claims as well as the claim alleged in Ground One.

Petitioner's first defaults occurred when he failed to perfect a timely appeal from the March 31, 2010 resentencing entry, and then waited nearly eighteen months before filing a motion for delayed appeal on November 18, 2011 with the Ohio Court of Appeals.  In his motion for delayed appeal, petitioner contended, as he has argued in Ground One of the instant petition, that he was prevented from filing a timely appeal because even though the trial judge informed him at the resentencing hearing that she would appoint counsel to assist in the filing of an appeal expressly requested by petitioner at the hearing, the trial court never appointed counsel to represent petitioner for appeal purposes.  (*See* Doc. 8, Ex. 35; *see also* Doc. 18, Tr. 12-13). Petitioner also stated in support of his motion for delayed appeal that seven months after he was resentenced, he filed a petition for writ of mandamus in the state courts to obtain a "final appealable order."  (*See* Doc. 8, Ex. 35).  It appears from the record that petitioner filed the mandamus petition because he was confused by the Ohio Court of Appeals' statement in its April 8, 2010 order, issued *after* entry of the resentencing decision, dismissing Case No. C0900617 (the appeal from the denial of his motion to vacate the original sentence) as moot because there was "no final judgment from which to maintain this appeal."  (*See id.* & Ex. 23). In his delayed appeal application, petitioner averred that after the mandamus petition was denied on December 8, 2010, he wrote to the Hamilton County Public Defender's Office, which responded on January 18, 2011 by providing petitioner with a copy of the March 2010 resentencing entry and informing him that no appeal from that decision had been filed.  (*Id.*, Ex. 35).

The Ohio Court of Appeals denied petitioner's motion for delayed appeal on the ground that petitioner had "failed to provide sufficient reasons for failure to perfect an appeal as of right." (*Id.*, Ex. 37). Under Ohio law, to succeed on a motion for delayed appeal brought pursuant Ohio R. App. P. 5(A), the defendant "must demonstrate cause for both the delay itself, and the length of the delay." *See Stone v. Moore*, 644 F.3d 342, 346 (6th Cir. 2011) (and Ohio Court of Appeals' cases cited therein). In *Stone*, 644 F.3d at 347, the Sixth Circuit held that although Rule 5(A) is a discretionary rule, the state appellate courts' enforcement of the rule's "cause" requirement in denying delayed appeal motions constitutes an adequate and independent state ground for the state courts' decision, which "can serve as the basis for a procedural default of a petitioner's habeas claims." Here, as in *Stone*, the Ohio Court of Appeals' clear and express reliance on petitioner's failure to provide "sufficient reasons" for his delay in perfecting an appeal constitutes an adequate and independent ground for the state court's decision to deny the delayed appeal motion. Petitioner's failure to promptly file the delayed appeal motion, therefore, amounted to a procedural default of all his grounds for federal habeas relief. *Cf. Stone*, 644 F.3d at 347-48.

In addition, petitioner committed a second procedural default in the resentencing proceedings when he failed to perfect a timely appeal to the Ohio Supreme Court from the Court of Appeals' denial of his delayed appeal motion. Although petitioner attempted to file a timely appeal with the state's highest court, his pleadings were initially returned to him because he failed to comply with an Ohio Supreme Court procedural rule requiring the filing of a notice of appeal. (*See* Doc. 8, Ex. 38). Moreover, although he attempted a second time to perfect an appeal upon correction of the notice of appeal problem, petitioner's pleadings were again returned to him because they were not received by the Ohio Supreme Court until after the

18

deadline for filing a timely appeal had expired. (*See id.*). Although petitioner thereafter

attempted to file a delayed appeal with the Ohio Supreme Court, it is presumed that the state

court relied on an adequate and independent state ground when it denied petitioner's motion filed

February 23, 2012 requesting leave to file a delayed appeal from the Ohio Court of Appeals'

December 13, 2011 decision. *See Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004) (per

curiam); *see generally Harris,* 489 U.S. at 260-62. As the Sixth Circuit explained in *Bonilla,*

"the applicable Ohio [Supreme Court] rules indicate that the denial of a motion for a delayed

appeal is a procedural ruling, not a ruling on the merits." *Bonilla,* 370 F.3d at 497 (and

unpublished Sixth Circuit cases cited therein). In this case, as in *Bonilla,* the Ohio Supreme

Court was "entirely silent as to its reasons for denying [the] requested relief." *See id.* In such

circumstances, it must be assumed that the state court enforced the applicable procedural bar to

review. *See id.* (citing *Simpson v. Sparkman,* 94 F.3d 199, 203 (6th Cir. 1996)).

Therefore, because petitioner committed procedural defaults on appeal from both his

original conviction and sentence entered October 23, 2001 and the trial court's March 31, 2010

resentencing decision, he has waived all three grounds for federal habeas relief unless he

demonstrates cause for and prejudice from his procedural defaults in the state courts or that

failure to consider the claims will result in a "fundamental miscarriage of justice." *See Hoffner,*

622 F.3d at 495 (citing *Maupin,* 785 F.2d at 138); *Johnson,* 493 F. App'x at 669. *See also*

*Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262; *Murray,* 477 U.S. at 485.

Petitioner has presented no justification for any of his procedural defaults on appeal from

his original conviction and sentence. However, he has argued as cause for his failure to perfect

timely appeals in the resentencing matter that (1) he was prevented from filing a timely appeal to

the Ohio Court of Appeals because the trial court did not follow through on its promise to

appoint counsel to assist him in appealing the resentencing decision; and (2) although his corrected appeal pleadings to the Ohio Supreme Court were timely sent out three days before the January 27, 2012, filing deadline, delays occurred that prevented the state supreme court clerk from receiving those documents until February 2, 2012, after the deadline had passed. (*See* Doc. 8, Exs. 35, 38; Doc. 11, pp. 5-6).

Assuming, without deciding, that delays in the prison mail room could have caused petitioner to miss the deadline for filing a timely appeal to the Ohio Supreme Court, petitioner has not demonstrated cause sufficient to excuse his procedural default in the proceeding before the Ohio Court of Appeals. As discussed above, under Ohio law, the defendant "must demonstrate cause for both the delay itself, *and the length of the delay*" to prevail on a motion for delayed appeal brought pursuant Ohio R. App. P. 5(A). *See Stone*, 644 F.3d at 346 (and Ohio Court of Appeals cases cited therein) (emphasis added). Here, petitioner has explained why he did not perfect a timely appeal with the Ohio Court of Appeals within thirty days of the trial court's March 31, 2010 resentencing entry as required by Ohio R. App. P. 4. However, he has not provided any justification for his prolonged delay of nearly eighteen months in seeking a delayed appeal under Ohio R. App. 5 with the Ohio Court of Appeals. It is clear from the record that on January 18, 2011, the Hamilton County Public Defender's Office both informed petitioner that no appeal of the resentencing decision had been filed and provided petitioner with a copy of the trial court's entry for appeal purposes. (*See* Doc. 8, Ex. 35). Although petitioner was thus well aware by that date that the trial court had not followed through on its promise to appoint counsel to assist petitioner in an appeal from the resentencing decision, petitioner waited another ten months before filing a notice of appeal and motion for delayed appeal on November 18, 2011 with the Ohio Court of Appeals. (*See id.* & Ex. 36). Petitioner has not explained why

he did not seek appellate review within the time normally allotted for filing timely appeals at that point in time. He, therefore, is unable to rely solely on the trial court's initial failure to appoint appellate counsel to pursue a timely appeal on petitioner's behalf as constituting cause for petitioner's procedural default in this case.

In an analogous case, where the petitioner argued that his appellate counsel's failure to inform him of a state court decision constituted cause for his failure to meet the deadline for perfecting a timely appeal, the Sixth Circuit held that "if the period of time between when the defendant learned of the [appellate court] decision and when he or she attempted to appeal the decision is *greater* than the period allotted by state law for the timely filing of an appeal . . ., the defendant fails to demonstrate that he or she "would have timely appealed" the decision but for [appellate] counsel's failure to notify the defendant of the decision." *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 435 (6th Cir. 2006) (emphasis in original). Similarly, here, after learning that no counsel had been appointed or appeal filed on his behalf and after receiving a copy of the March 31, 2010 resentencing entry for appeal purposes, petitioner did not take any action to appeal that decision within the 30-day time frame allotted by state law for filing a timely appeal. Therefore, as in *Smith*, petitioner's reliance on the trial court's initial failure to appoint appellate counsel to assist in the filing of a timely appeal is insufficient to overcome the procedural default of his claims. *See id.* at 436; *cf. Gau v. Kelly,* No. 4:09cv2955, 2011 WL 400141, at *6-7 (N.D. Ohio Feb. 4, 2011).

Finally, petitioner has not demonstrated that failure to consider his defaulted claims for relief will result in a "fundamental miscarriage of justice," or in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96. *See also Schlup v. Delo,* 513 U.S. 298, 327 (1995).

Accordingly, in sum, the undersigned concludes that petitioner procedurally defaulted all of his claims for federal habeas relief.  Because petitioner has not demonstrated cause for his numerous procedural defaults in the state courts or that a fundamental miscarriage of justice will occur if his claims are not considered by this Court, the petition should be denied with prejudice on the ground that petitioner has waived his claims for relief.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 5) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which this Court has concluded are barred from review on a procedural ground, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether the Court is correct in its procedural ruling.[6]

---

[6] Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in any of his defaulted grounds for relief.  *See Slack,* 529 U.S. at 484.  However, it is noted that Grounds Two and Three of the petition do not appear to state a viable constitutional claim.  Contrary to petitioner's contention in Ground Two, no Double Jeopardy Clause concerns are triggered in this case because under Ohio law, aggravated robbery and felonious assault are not allied offenses of similar import.  *See, e.g., Scuba v. Brigano,* 527 F.3d 479, 487 (6th Cir. 2007); *Brooks v. Warden, Warren Corr. Inst.*, No. 3:12cv318, 2012 WL 4483439, at *3 (S.D. Ohio Sept. 27, 2012) (Merz, M.J.) (Report & Recommendation), *adopted,* 2012 WL 5269203 (S.D. Ohio Oct. 24, 2012) (Rose, J.).  Moreover, petitioner is unable to prevail on any claim that his double jeopardy rights were violated by the non-merger of his convictions on two counts of felonious assault involving victim Mary Barnett, as well as his convictions for the aggravated robbery of victims Barnett and Anthony Jones, because the felonious assault counts stemmed from two separate assaults on Barnett and the aggravated robbery charges involved two separate victims.  Finally, petitioner is unable to prevail on his claim in Ground Three that his Sixth Amendment jury trial right was violated when he was resentenced in March 2010 to the same terms of imprisonment that were imposed on October 23, 2001.  The Supreme Court made it clear in *Oregon v. Ice,* 555 U.S. 160 (2009), that the imposition of consecutive sentences does not implicate Sixth Amendment concerns.  Furthermore, when petitioner was sentenced in 2001, the Supreme Court had not decided *Blakely v. Washington,* 542 U.S. 296 (2004), extending the Sixth Amendment to limit judicial sentencing to "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant;" nor had the Ohio Supreme Court decided *State v. Foster,* 845 N.E.2d 470 (Ohio 2006), holding certain provisions of Ohio's sentencing statute unconstitutional in light of *Blakely.*  Neither *Blakely* nor *Foster* apply retroactively to permit collateral review of the trial court's initial sentencing decision, which became final by the conclusion of direct review in 2002.  *See, e.g., Lee v. Brunsman,* 474 F. App'x 439, 443-44 (6th Cir. 2012) (and cases cited therein); *Foster,* 845 N.E.2d at 499 (expressly stating that its

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date: ___10/15/13___

Karen L. Litkovitz
United States Magistrate Judge

---

decision extended retroactively only to cases that were still pending on direct review). To the extent that petitioner claims that the trial court's resentencing decision in March 2010 violates *Blakely* and its progeny, his claim must fail because the remedy adopted by the Ohio Supreme Court in *Foster* for correcting the constitutional infirmities was to sever the unconstitutional provisions from the sentencing statute and to grant the trial courts full discretion to impose a sentence within the range established by state statute. Therefore, no Sixth Amendment concerns are presented by the trial court's decision in March 2010 to sentence petitioner to the same terms of imprisonment falling within the statutory range that were originally imposed in October 2001.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

GERALD WATSON,
     Petitioner,

vs.

WARDEN, WARREN
CORRECTIONAL INSTITUTION,
     Respondent.

Case No. 1:12-cv-362

Dlott, J.
Litkovitz, M.J.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc

24

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Gerald Watson #A416-657
Warren Corr. Inst.
P.O. Box 120
State Route 63
Lebanon, OH 45036

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☑ Agent  ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☑ Certified Mail     ☐ Express Mail
   ☐ Registered         ☐ Return Receipt for Merchandise
   ☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7011 3500 0001 5345 9497

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540